UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

La Nae Johnson,

                      Plaintiff,

v.

Bethesda, *et al.*,

                      Defendants.

Civ. No. 13-2575 (RHK/TNL)
**MEMORANDUM OPINION AND ORDER**

---

Jenny M. Helling, Nicholas G.B. May, Fabian May & Anderson, P.L.L.P., Minneapolis, Minnesota, for Plaintiff.

Michael L. Puklich, Neaton & Puklich, P.L.L.P., Chanhassen, Minnesota, for Defendants.

---

## INTRODUCTION

Plaintiff La Nae Johnson alleges in this action that her former employer, Defendant Bethesda (d/b/a Bethesda Heath & Housing and Bethesda Home Health) ("Bethesda"), and her former supervisor, Defendant Nancy Deiter, terminated her employment in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*. Defendants now move for summary judgment, and for the reasons explained below, their Motion will be denied.

## BACKGROUND

The following facts are recited in the light most favorable to Johnson.

Bethesda, a unit of a not-for-profit social ministry organization in Willmar, Minnesota, offers home health care services primarily for older adults. (Haefner Aff. ¶¶ 1-2.) Johnson worked at Bethesda for ten years as a home health scheduler, creating

the work schedule for home health aides and homemakers who served its clients. (Johnson Decl. ¶ 1; Helling Aff., Ex. E, at 1.) She was also charged with other administrative tasks, including filing documents in patients' charts; in fact, she was the only Bethesda employee whose official job description included filing. (Helling Aff., Ex. E., at 2, ¶ 11; Deiter Aff. ¶ 9.)

In early 2012, Johnson learned she required knee surgery. She informed Bethesda in early February that she would need to take medical leave later in the spring. (Johnson Decl. ¶ 8.) That same month (February), Bethesda demoted its director of nursing and hired Deiter as the new director. (Raap Decl. ¶ 4.) Deiter quickly began reorganizing many of Bethesda's operating policies and procedures (Miner Decl. ¶ 5), which included changing Bethesda's software system and, as a result, restructuring some jobs. (Deiter Dep. 56.)

One of the jobs Deiter restructured—with the approval of Bethesda's CEO Michelle Haefner—was Johnson's, reducing her hours and changing her responsibilities. (Helling Aff., Ex. J; id., Ex. I, at 5.) Deiter investigated the impact Johnson's upcoming FLMA leave would have on Bethesda's ability to change her job description, noting Bethesda was required to return her to the same or an equivalent job, but its obligation was less clear if the job no longer existed. (Id., Ex. I, at 5-6.) Deiter advised Johnson of her new job description on March 20. (Id., Ex. I, at 5.) In a meeting a few days later, Deiter cautioned Johnson that, based on her work habits, she might not be capable of meeting the new requirements and recommended she use her leave time to look for other jobs, including other clerical positions at Bethesda. (Id., Ex. I, at 5-6.) When Johnson

2

expressed concern she would be fired after her FMLA leave, Deiter assured her she would get 25 hours of work per week upon return.[1] (Id., Ex. A, at 3-4.)  Johnson also was told by human resources employee Lora Taatjes that she should look for a new job while on FMLA leave because her termination "was a planned thing."[2] (Id., Ex. A, at 4; Raap Decl. ¶ 12.)

Johnson began her FMLA leave on April 2, 2012.  (Johnson Decl. ¶ 10.)  A month later, while she was on leave, the Minnesota Department of Health ("DOH") conducted an audit to check Bethesda's compliance with federal and state regulations.  (Haefner Aff. ¶ 7.)  DOH found Bethesda failed to meet twelve standards.  (Helling Aff., Ex. M.)  In subsequent discussions DOH focused on Bethesda's failure to maintain patient files.  (Haefner Dep. 89.)  DOH found documents missing from each of the ten patient files it randomly reviewed.  (Helling Aff., Ex. M, at 10.)  As a result of these deficiencies, Bethesda was given ten days to submit a plan of corrective action and 45 days to correct the deficiencies or lose Medicare and Medicaid certification.  (Haefner Aff., Ex. C, at 2.)  In effect, because of these deficiencies and their potential financial implications, Bethesda was at risk of being shut down.  (Id. ¶ 7.)

The filing practices at Bethesda before the DOH survey were, as Johnson acknowledges, chaotic.  (Johnson Dep. 96.)  Deiter and Haefner both knew there was no filing policy.  (Helling Aff., Ex. M, at 12; Williamson Decl. ¶ 12.)  While Johnson was

---

[1] At the time, Johnson worked Monday through Friday from 7:30 am to 4:00 pm.  (Helling Aff., Ex. E, at 1.)

[2] Taatjes denies saying this.  (Taatjes Dep. 54.)

the only person at Bethesda whose job description included filing, in practice nurses and home health aides also regularly completed filing. (Nelson Decl. ¶ 5; Williamson Decl. ¶ 10; Raap Decl. ¶ 8.) But, as they were overworked, these employees often fell behind. (Raap Decl. ¶ 7.) In addition, the nurses informed Deiter that they had asked Johnson to put documents on their desks *instead* of filing them, so they could better meet client needs. (Duininck Decl. ¶ 7.) And others also occasionally did filing work: Dawn Weyrauch, for example, came in on a Sunday in March, with Deiter present, to work on filing. (Weyrauch Dep. 14-17; Johnson Decl. ¶ 9.)

On June 4, 2012, when Johnson attempted to return to work following her FMLA leave, her employment was terminated. (Helling Aff., Ex. A, at 4.) According to Deiter, Johnson was dismissed because of the results of the DOH survey, as well as her observations of Johnson's performance before she went on leave. (Deiter Aff. ¶ 8.) According to Haefner, Johnson was terminated because she was responsible for the filing deficiencies, or at the very least knew about them and failed to report them. (Haefner Aff. ¶ 10-12.) Johnson received an Employee Corrective Action Notice explaining her employment was terminated because she had failed to complete tasks as assigned to the extent it threatened Bethesda's Medicare certification. (Helling Aff., Ex. I, at 1.) Bethesda did not put Johnson into its progressive discipline program; rather, she was terminated without any prior warning or reprimand. (Johnson Decl. ¶ 3.) This was the only time in Taatjes's tenure that an employee was fired without going through the progressive discipline program (Taatjes Dep. 19), but according to Deiter, it was because

4

Johnson's failure to properly file was sufficiently severe to justify immediate termination. (Deiter Aff. ¶ 8.)

Johnson filed this action in September 2013, asserting in a single claim that Defendants violated her FMLA rights by firing her. Defendants now move for summary judgment. The Motion has been fully briefed and is now ripe for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving parties are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009). The moving parties bear the burden of showing that the material facts in the case are undisputed. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Beard v. Banks, 548 U.S. 521, 529-30 (2006); Weitz Co. v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

## ANALYSIS

*1. The FMLA Generally*

The FMLA entitles eligible employees to up to twelve weeks of leave in a twelve-month period when they have serious health conditions making them unable to perform

their work functions.  29 U.S.C. § 2612(d).  The Eighth Circuit recognizes three types of FMLA claims:  (1) an "entitlement" claim (previously known as an "interference" claim) arises when an employer avoids fulfilling its responsibilities under the statute. § 2615(a)(1); Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1005 (8th Cir. 2012);  (2) a "retaliation" claim arises when an employer takes adverse action against an employee who "opposes any practice made unlawful under the FMLA."  § 2615(a)(2); Pulczinski, 691 F.3d at 1005; and (3), a "discrimination" claim arises when an employer takes adverse action against an employee after she exercises her FMLA rights. § 2615(a)(1); Pulczinski, 691 F.3d at 1005.

Johnson's Complaint is unclear as to which type of FMLA claim she asserts, but she references "entitlement" and "discrimination" in her brief.  Defendants characterize Johnson's Complaint as bringing an entitlement and a retaliation claim, but their analysis of the claim they label "retaliation" makes clear that substantively they are arguing about a discrimination claim.  See Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1016 (8th Cir. 2013) ("Under the categorization in Pulczinski, [Plaintiff's] 'retaliation' claim is a discrimination claim.").  Therefore, the Court will consider Defendants' arguments labeled "retaliation" as addressing discrimination.  The Court will take each claim in turn.

 2.  *Entitlement Claim*

An entitlement claim arises when an employer "denies or interferes with an employee's substantive FMLA rights."  Id. at 1015.  Unlike other employment claims, the employer's intent is irrelevant.  Estrada v. Cypress Semiconductor (Minn.) Inc., 616 F.3d 866, 871 (8th Cir. 2010).  In fact, the former employee need only show she was

entitled to the benefit denied.  Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006).  If she does, however, the employer may avoid liability by demonstrating it terminated the employee for a reason unrelated to the FMLA benefit.  Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977-99 (8th Cir. 2005).  That is, an employer is not liable if it "can prove it would have made the same decision had the employee not exercised [her] FMLA rights."  Id.; see also Ballato v. Comcast Corp., 676 F.3d 768, 772 (8th Cir. 2012).  Notably, the burden is on the *employer* to do so. Throneberry, 403 F.3d at 977.

It is undisputed Johnson was entitled to be restored to the position (or an equivalent) she occupied before taking FMLA leave, yet she was fired when she attempted to return to work.  Nevertheless, Defendants argue they terminated Johnson for a reason unrelated to the FMLA:  the filing deficiencies identified in the DOH audit, which threatened to close Bethesda.  (Haefner Aff., Ex. D, at 10; id. ¶ 7.)  She was the only person at Bethesda whose official job description included filing, and her supervisor, Deiter, had previously reminded her that filing was part of her responsibilities.  (Id. ¶ 4; Deiter Aff. ¶ 9.)  Moreover, even if Johnson was not solely responsible for filing, Defendants contend the relevant question is whether they had a *good-faith belief* filing was her responsibility.  Ketchum v. St. Cloud Hosp., 994 F. Supp. 2d 1012, 1020 (D. Minn. 2014) (Kyle, J.) (emphasis added).  Deiter wrote on Johnson's termination form that she was fired for not completing filing in a timely manner, and she testified she believed—and continues to believe—that Johnson was responsible for filing.  (Helling

7

Aff., Ex. I, at 1; Deiter Aff. ¶¶ 9-10.)  Haefner also testified she believed Johnson was the employee responsible for filing.  (Haefner Aff. ¶ 11.)

Johnson, however, contends that Defendants did not fire her for the non-FMLA reason they claim—the results of the DOH survey—but because they had planned to terminate her employment long before the survey was conducted.  After Bethesda changed Johnson's job description and cut her work hours in March, Deiter suggested Johnson spend her FMLA leave considering other jobs because she did not think Johnson was capable of handling the new job responsibilities.  (Helling Aff., Ex. I, at 5-6; id., Ex. A, at 3.)  More importantly, Johnson testified Taatjes warned her before starting FMLA leave that her termination was "a planned thing."  (Johnson Decl. ¶ 9; Raap Decl. ¶ 12.)  Furthermore, Deiter investigated Bethesda's obligation to return her to work following her FMLA leave, which according to Johnson suggests Bethesda was looking for a way to punish her for using FMLA time.  (Helling Aff., Ex. I, at 6.)  Taking these facts in the light most favorable to Johnson, a reasonable jury could conclude Defendants intended to fire her before the DOH survey.  In the Court's view, there is sufficient evidence disputing Defendants' proffered reason for terminating her that it cannot say, as a matter of law, that Johnson's employment was terminated for a reason unrelated to her FMLA leave.

   3. *Discrimination Claim*

A discrimination claim arises when the employer discriminates against the employee because she exercised her FMLA rights.  Pulczinski, 691 F.3d at 1006.  To prevail, Johnson must prove the exercise of her rights motivated Defendants to fire her.

8

Id. While she can do so with either direct or indirect evidence, she points only to indirect evidence. Indirect evidence is analyzed under the McDonnell Douglas framework. E.g., Wierman v. Casey's Gen. Stores, 638 F.3d 984, 999 (8th Cir. 2011). Johnson must first establish a prima facie case of discrimination. Id. Defendants must then articulate a legitimate, non-discriminatory reason for terminating her employment. Id. Finally, Johnson must identify evidence sufficient to create a genuine issue of material fact that Defendants' proffered reason was mere pretext. Id. Ultimately, Johnson has the burden of proving that Defendants' conduct was motivated by her exercise of FMLA rights. Pulczinski, 691 F.3d at 1007.

To state a prima facie claim of discrimination, Johnson must show 1) she engaged in activity protected by the FMLA, 2) she suffered a materially adverse employment action, and 3) there was a causal connection between the two. Id. The parties agree Johnson satisfies the first two elements: she took FMLA leave and later was fired. At issue is the third element, the causal link. Johnson argues temporal proximity shows a causal connection because she was terminated the same day she attempted to exercise her FMLA rights to be reinstated to work. (Helling Aff., Ex. A, at 4.) However, the relevant date when considering temporal proximity is not the day she failed to get reinstated, but the day Defendants knew she planned to take FMLA leave. Sisk v. Picture People, Inc., 669 F.3d 896, 900 (8th Cir. 2012); Bloom v. Grp. Health Plan, Inc., Civ. No. 12-3060, 2014 WL 3955668, at *4 (D. Minn. Aug. 13, 2014) (Davis, C.J.). Here, Defendants knew in February that Johnson planned to take FMLA leave. (Johnson Decl. ¶ 8.) That is, more than three months passed between Defendants learning about Johnson's FMLA

leave and the termination of her employment. This is too attenuated to justify inferring a causal connection. Sisk, 669 F.3d at 901.

However, in the Court's view, other facts at least raise an inference that Johnson's employment was terminated because she took FMLA leave: (a) Deiter changed her job description in March and noted the FLMA requirements for returning employees to work, implying she was trying to find a way to legally terminate Johnson for taking FMLA leave (Helling Aff., Ex. I, at 5); (b) Deiter took detailed performance notes about her before starting FMLA leave, and did not take these notes about any other employee (Deiter Dep. 35); and (c) shortly before starting leave, Deiter suggested she look for a new job and Taatjes told her that her termination was planned. Johnson's burden of establishing a prima facie case is low. To establish a causal link she need only provide evidence "giving rise to an inference of retaliatory motive." Thomas v. Corwin, 483 F.3d 516, 531 (8th Cir. 2007). Based on the foregoing, the Court concludes she has met this minimal burden and stated a prima facie claim of discrimination.

Defendants respond that Johnson was fired because she failed to perform her filing work satisfactorily, nearly forcing Bethesda out of business. This non-discriminatory reason obligates Johnson to identify evidence sufficient to create a genuine issue that the reason was mere pretext. She may do this by showing Defendants' explanation has no basis in fact—that it is "unworthy of credence"—or that a prohibited reason more likely motivated Defendants. Stallings, 447 F.3d at 1052. Here, she contends Defendants' explanation is unworthy of credence, for several reasons.

The crux of Johnson's argument is that she was not exclusively responsible for filing; therefore, claiming to fire her for unsatisfactory filing has no basis in fact. Johnson has extensively documented that many people at Bethesda performed filing. The relevant question, though, is whether Defendants *believed* Johnson was responsible for filing, regardless of the actual practice. See, e.g., Macias Soto v. Core-Mark Int'l, Inc., 521 F.3d 837, 842 (8th Cir. 2008). And Deiter and Haefner both testified they believed Johnson was responsible for filing. (Deiter Aff. ¶ 9; Haefner Aff. ¶ 12.) Johnson, however, points to several facts suggesting Defendants knew she was not the sole Bethesda employee doing filing work. Deiter knew the nurses asked Johnson to put documents on their desks instead of filing them (Duininck Decl. ¶ 7), and Deiter observed Weyrauch, not Johnson, working on filing one Sunday afternoon (Deiter Dep. 81-83). Moreover, Deiter and Haefner knew Bethesda did not have a filing policy. (Helling Aff., Ex. M, at 12; Williamson Decl. ¶ 12.) While this evidence is not particularly strong, it does raise some question about what Defendants actually believed.

These facts are more significant when viewed in conjunction with several others. First, Bethesda failed to follow its progressive disciplinary policy when it terminated Johnson's employment. An employee can show pretext by demonstrating her employer deviated from standard policies. Stallings, 447 F.3d at 1052. While Bethesda's progressive disciplinary policy does allow for immediate termination if the situation warrants it (Helling Aff., Ex. F, at 18-19), that was not Bethesda's standard practice. In fact, Taatjes testified she was never involved in a disciplinary situation where the progressive policy was not used. (Taatjes Dep. 19.) Second, Deiter suggested that

11

Johnson look for a new job and Taatjes warned her that her termination was planned, calling into question whether she was truly fired because of the DOH survey. Cumulatively, these facts are sufficient to raise a genuine issue where Defendants' proffered reason is unworthy of credence and was mere pretext.

   4. *Individual Defendant*

Defendants also contend Deiter should be dismissed from the case because, as an individual, she is not subject to liability under the FMLA. But the Eighth Circuit has interpreted the FMLA to provide for individual liability. Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002). "[I]f an individual meets the definition of employer as defined by the FMLA, then that person should be subject to liability in his individual capacity." Id.; see also Rynders v. Williams, 650 F.3d 1188, 1196 (8th Cir. 2011); Page v. Ark. State Univ., Civ. No 3:13-77, 2014 WL 584792, at *4 (E.D. Ark. Feb. 14, 2014); Breidenbach v. Shillington Box Co., LLC, Civ. No. 4:11-1555, 2012 WL 85276, at *5 (E.D. Mo. Jan. 11, 2012). The FMLA defines "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(1).

Some courts, including district courts in the Eighth Circuit, have held that not everyone who *could* qualify as an "employer" under the language of the FMLA *should* be subject to individual liability; these courts use an "economic reality test" to narrow the availability of individual liability. Womack v. RCM Techs. (USA), Inc., Civ. No. 07-2111, 2008 WL 52382318, at *10 (D. Minn. Dec. 23, 2008) (Frank, J.); see also, e.g., Haybarger v. Lawrence Co. Adult Probation & Parole, 667 F.3d 408, 418 (3d Cir. 2012);

Harville v. Tex. A&M Univ., 833 F. Supp. 2d 645, 654 (S.D. Tex. 2011). This test is intended to determine if the individual "possessed the power to control the worker[] in question." Saunders v. Ace Mortg. Funding Inc., Civ. No. 05-1437, 2007 WL 4165294, at *4 (D. Minn. Nov. 16, 2007) (Frank, J.); see also Caire v. Conifer Value Based Care, LLC, 982 F. Supp. 2d. 582, 598 (D. Md. 2013). At bottom, the analysis considers the totality of the circumstances, Womack, 2008 WL 52382318, at *10, but in this case, both parties agree on the following relevant factors: whether Deiter 1) had the power to hire or fire Johnson; 2) supervised or controlled employee work schedules; 3) determined the rate and method of payment; and 4) maintained employment records.

Whether this Court looks only to the statutory definition of "employer" or relies on the economic reality test, the outcome is the same. Interpreting the facts in the light most favorable to Johnson, there is at least a question of fact about whether Deiter is an "employer" such that she is subject to individual liability. Deiter had the power to hire employees. (Deiter Dep. 16.) Together with Haefner, she made the decision to terminate Johnson's employment. (Haefner Dep. 38.) And she was the person who fired Johnson the day Johnson attempted to return to work. (Helling Aff., Ex. I.) See Haybarger, 667 F.3d at 418-19 (holding there was a question of fact as to whether a supervisor qualified as an employer under the FMLA where the supervisor advised the plaintiff be terminated, even though he did not have final authority to terminate her, was present at her termination, and wrote the termination letter.) Moreover, Deiter controlled Johnson's work schedule, reorganizing Johnson's position and reducing her hours in the months before she was fired. (Helling Aff., Ex. J; Id., Ex. I, at 5.) Finally, Deiter maintained

13

employment records, keeping an employee file on Johnson and completing the paperwork to fire Johnson. (Deiter Dep. 35; Helling Aff., Ex. I, at 1.) These facts suggest that Deiter had the ability to control Johnson's employment and was acting in the interest of Bethesda. Under these circumstances, the Court declines to dismiss Deiter.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 21) is **DENIED**.

Date: December 3, 2014

                                              s/Richard H. Kyle
                                              RICHARD H. KYLE
                                              United States District Judge